UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
QUALITY DOOR & HARDWARE, INC.,

                         Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     19-CV-4574(JS)(AKT)

STANLEY SECURITY SOLUTIONS, INC., and
DORMAKABA HOLDING AG, doing business as
DORMAKABA USA INC.,

                         Defendants.
----------------------------------------X

FILED
CLERK

3:27 pm, Nov 10, 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

APPEARANCES
For Plaintiff:      Justin N. Lite, Esq.
                    Lite & Russell Esq.
                    212 Higbie Lane
                    West Islip, New York 11795

                    Richard J. DaVolio, Esq.
                    Law Offices of Richard J. DaVolio, PC
                    160 Main Street, Suite 104
                    Sayville, New York 11782

For Defendants:     Michael J. Crowley, Esq.
                    Michael Bojbasa, Esq.
                    Connell Foley LLP
                    888 Seventh Avenue, 9th Floor
                    New York, New York 10106


SEYBERT, District Judge:

        Plaintiff Quality Door & Hardware, Inc. ("Plaintiff")
commenced this diversity action against defendants Stanley
Security Solutions, Inc. ("Stanley") and Dormakaba Holding AG
doing business as Dormakaba USA Inc. ("Dormakaba") (collectively
"Defendants") alleging claims of intentional fraud, breach of
contract, de facto merger, and civil conspiracy to commit fraud.
(Compl., D.E. 1.)  Currently before the Court is  Defendants'

motion requesting that the Court either (1) stay this action pending the outcome of a related matter before Magistrate Judge Arlene R. Lindsay in Quality Door & Hardware, Inc. v. Stanley Security Solutions, Inc., No. 15-CV-6280 (E.D.N.Y.) (Lindsay, M.J.) (the "Related Action") or (2) dismiss this action as barred by the doctrines of res judicata and/or collateral estoppel. (Mot., D.E. 28; Defs. Br., D.E. 28-1; Pl. Opp., D.E. 34;[1] Defs. Reply, D.E. 35.)  Also before the Court is Plaintiff's motion to disqualify Michael Bojbasa and the Connell Foley LLP law firm ("Connell Foley") from representing Defendants.  (Disqual. Mot., D.E. 23.)[2]  For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part, Plaintiff's motion to disqualify defense counsel is DENIED without prejudice, and Plaintiff is GRANTED leave to file an Amended Complaint.

---

[1] Plaintiff submitted two memoranda in opposition.  (Compare D.E. 33-1 with D.E. 34.)  The Court considers the later-filed brief at Docket Entry 34.

[2] Plaintiff submitted two motions to disqualify defense counsel. (Compare D.E. 22 with D.E. 23.)  The Court considers the later-filed motion at Docket Entry 23.

BACKGROUND AND PROCEDURAL HISTORY[3]

I.   Factual Allegations

        Around July 31, 2012, Plaintiff completed an application for a twenty-year contract to sell certain commercial door hardware (the "Products") manufactured by defendant Stanley to the U.S. General Services Administration ("GSA").   (Compl. ¶ 7.)   In connection with the application, Plaintiff supplied GSA with a specific price list.   (Id.)   On March 28, 2012, Stanley, through its compliance manager, executed a letter of supply assuring Plaintiff "an uninterrupted source of supply, with sufficient quantities of product" throughout the duration of the GSA contract (the "Letter of Supply").   (Id. ¶ 8.)   On or about August 1, 2014, GSA awarded Plaintiff a twenty-year Multiple Award Schedule contract (the "GSA Contract"), under which Plaintiff would sell GSA certain products, including the Products identified in the Letter of Supply.   (Id. ¶ 9.)   The GSA Contract provided the parties with an option to renew every five years unless otherwise terminated.[4]   (Id. ¶ 15.)   To accommodate the GSA Contract, Plaintiff implemented certain changes to its business, such as expanding its staff.   (Id. ¶ 10.)

---

[3] The following facts are drawn from the Complaint and are assumed to be true for purposes of this Memorandum and Order.

[4] As of the date of the Complaint, the GSA Contract was in its first five-year renewal period.   (Compl. ¶ 15.)

On November 2, 2015, Plaintiff initiated the Related Action, as discussed <u>infra</u>.  Shortly thereafter, on or about December 4, 2015, Stanley served a "Notice of Termination" of a 27-year Dealer Program Agreement to Plaintiff.  (<u>Id.</u> ¶ 14.)  The Notice of Termination expressly stated that Stanley would "continue to sell and ship [Products to Plaintiff] in support of the previously issued Letters of Supply . . . up to the first expiration of each of [Plaintiff's] GSA Contracts." (<u>Id.</u> (emphasis omitted).)  On or about February 21, 2017, Stanley sold its entire commercial door hardware line of assets, including the Products covered by the Letter of Supply, to defendant Dormakaba for approximately $725 million (the "Sale").  (<u>Id.</u> ¶ 11.)  As a result, Stanley did not control the manufacturing and distribution of the Products and could not comply with its obligations under the Letter of Supply.  (<u>Id.</u> ¶ 12.)

Plaintiff alleges that through the course of discovery in the Related Action, it attempted to determine whether Stanley assigned its obligations under the Letter of Supply to Dormakaba in the Sale.  (<u>Id.</u> ¶ 17.)  As alleged, Defendants have declined to confirm whether Stanley assigned its obligations to Dormakaba. (<u>Id.</u> ¶¶ 17-20.)

II.  <u>The Related Action</u>

On or about September 24, 2015, Plaintiff initiated the Related Action in Suffolk County Supreme Court against Stanley

4

asserting claims for breach of contract, fraud, and breach of the implied covenant of good faith and fair dealing.  There, Plaintiff claims, among other things, that Stanley (1) interfered with Plaintiff's ability to sell the Products to GSA by instructing its sales force to divert business from Plaintiff and (2) improperly controlled the prices at which Plaintiff could sell the Products under the GSA Contract.[5]  On or about November 3, 2015, Stanley removed the Related Action to this District and on November 19, 2015 the parties consented to the jurisdiction of Judge Lindsay for all proceedings.

After Stanley sold its product line to Dormakaba, Plaintiff expressed interest in amending the Related Action Complaint to name Dormakaba as a defendant.  In response, Stanley advised that while it was selling its mechanical access control business, Stanley had no plans to dissolve the company and was therefore the proper defendant.  (Apr. 4, 2017 Ltr., Related Action, No. 15-CV-6280, D.E. 46, at 3.)  Plaintiff did not file an amended complaint and discovery continued.

On April 26, 2018, the parties filed cross-motions for summary judgment.  On April 22, 2019, Judge Lindsay issued an order

---

[5] The facts underlying the Related Action largely mirror the facts asserted here.  Here, however, Plaintiff's claims arise out of (1) Stanley's inability to provide Plaintiff with the Products as a result of the Sale to Dormakaba and (2) whether Stanley properly assigned (or fraudulently misrepresented) its obligations under the Letter of Supply to Dormakaba.

denying Plaintiff's motion for partial summary judgment and granting, in part, Stanley's motion for summary judgment.  (Apr. 22, 2019 M&O, Related Action, No. 15-CV-6280, D.E. 94, at 16 (the "Prior Order").)   As for Plaintiff's breach of contract claim, Judge Lindsay found that, as a general matter, letters of supply are not stand-alone contracts.  (Id. at 17.)   However, the court denied Stanley's motion finding that a "question of fact remains as to whether Stanley breached the Dealer Program Agreement by shutting down [Plaintiff's] ability to sell any Stanley products to the GSA."[6] (Id. at 19; id. at 18 (finding a question of material fact exists as to whether the alleged "legal authorized manufacturer's representative for Stanley" had authorization to issue certain Letters of Supply).)   The court also denied Plaintiff's motion for partial summary judgment finding that it could not "rely on the sale of Stanley's business as evidence of the breach -- a sale that occurred well after the Complaint was filed" and denied Plaintiff leave to amend "given the prejudice to Stanley."  (Id. at 15-16.)

---

[6] Judge Lindsay granted Stanley's motion with respect to the breach of contract claim as it relates to Stanley's withdrawal of "assistance and support" because Plaintiff "failed to come forward with sufficient evidence" to support the claim.  (Prior Order at 19.)  The court further dismissed Plaintiff's claims for fraud and breach of the implied covenant of good faith and fair dealing. (Id. at 20-23.)

After Plaintiff withdrew its appeal of the Prior Order, Stanley requested, among other things, "additional briefing to further clarify certain issues which it believes would warrant the granting of a dismissal of all claims in" the Related Action. (Sept. 11, 2019 Ltr., Related Action No. 15-CV-6280, D.E. 102.) At a September 16, 2019 conference, Judge Lindsay stated that Plaintiff did not specifically allege a breach of contract claim based on the sale of Stanley's product line and Plaintiff "did not amend the complaint," as suggested, and "instead brought an entirely new action." (Sept. 16, 2019 Tr., D.E. 104, at 2:7-17.) Judge Lindsay further stated that she did "not exactly" determine that the Letters of Supply were not contracts. (Id. at 2:18-22.) Rather, she clarified that "ordinarily the law is clear" that letters of supply "standing alone do not constitute a contract" but in the Related Action, a jury should resolve "whether or not" certain evidence rendered the Letters of Supply a "binding obligation." (Id. at 2:23-3:11.) The Related Action is stayed pending the outcome of this motion.

III. This Action and the Pending Motions

Plaintiff commenced this action on August 8, 2019 asserting claims for (1) intentional fraud and breach of contract against Stanley, (2) breach of contract against Dormakaba, and (3) civil conspiracy against both Defendants. (See Compl.) On December 16, 2019, Plaintiff moved to disqualify Michael Bojbasa

and Connell Foley from representing Defendants in this or any action against Plaintiff.  (See Disqual. Mot.)  On January 31, 2020, Defendants moved to dismiss this action in its entirety. (See Mot.)  Both motions are currently before the Court.

ANALYSIS

I.  Legal Standard

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quot(ing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted).

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002).  The Court may also "consider court documents or matters of public record at the motion to dismiss

8

stage where both parties had notice of their contents and the documents are integral to the complaint." Koch v. Christie's Int'l PLC, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011), aff'd, 699 F.3d 141 (2d Cir. 2012); Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 268-69 (S.D.N.Y. 2005) (taking judicial notice of documents submitted in a related action when deciding a motion to dismiss because they contained statements that allegedly contradicted the factual allegations in the complaint); Silver Line Bldg. Prods. LLC v. J-Channel Indus. Corp., 12 F. Supp. 3d 320, 322-23 & n.1 (E.D.N.Y. 2014) (taking judicial notice of "similar lawsuits" filed by patent holder against other defendants).

II. Discussion

   A. Defendants' Motion to Dismiss

      1.   Intentional Fraud and Breach of Contract Claim

      Defendants first argue that Plaintiff's cause of action for "Intentional Fraud and Breach of Contract" against Stanley is barred by res judicata and collateral estoppel because Judge Lindsay "held that the Letter(s) of Supply were not 'stand-alone contracts.'" (Defs. Br. at 14-15.) "Summary judgment is an adjudication on the merits, and can have res judicata effect provided that judgment has been entered." Sosa v. New York City Dep't of Educ., 368 F. Supp. 3d 489, 508 (E.D.N.Y. 2019) (collecting cases). "A partial summary judgment grant operates similarly--there must be final judgment entered as to the dismissed

claims." Id. ("A district court is empowered to enter final judgment pursuant to Rule 54(b) as to those claims dismissed in a partial summary judgment decision."). "Otherwise, the partial summary judgment decision acts only as an order that is subject to revision" and "that possibility deprives the partial summary judgment decision of res judicata effect." Id. (citing Rule 54(b)) (collecting cases).

As a preliminary matter, there is no final judgment with respect to the claims Judge Lindsay dismissed in the Related Action and thus collateral estoppel and "res judicata cannot be applied to bar" those claims here. Id. Second, Plaintiff's argument that the breach of contract claim against Stanley is barred by res judicata and collateral estoppel is without merit given that Judge Lindsay denied Stanley summary judgment on that claim. (See discussion, supra; Prior Order at 19 (noting that while letter(s) of supply are not stand-alone contracts as a general matter, "a question of fact remains as to whether Stanley breached the Dealer Program Agreement by shutting down Quality's ability to sell any Stanley products to the GSA.").) Judge Lindsay confirmed this understanding at the September 16, 2019 conference by stating that she did "not exactly determine[]" that the Letters of Supply were not contracts. (Sept. 16, 2019 Tr. at 2:18-3:1.) As such, because "denial of a motion for summary judgment is not a final judgment, Kay-R Elec. Corp. v. Stone & Webster Const. Co., Inc., 23 F.3d 55,

10

59 (2d Cir. 1994), collateral estoppel [and res judicata are] not appropriately applied to the [Related Action] court's observations in denying [Stanley's] motion for summary judgment on the" breach of contract claim. Great Atl. & Pac. Tea Co., Inc. v. 380 Yorktown Food Corp., No. 16-CV-5250, 2020 WL 4432065, at *14 n.18 (S.D.N.Y. July 31, 2020); Nieto v. Vill. Red Rest. Corp., No. 17-CV-2037, 2017 WL 4539327, at *1 (S.D.N.Y. Oct. 10, 2017) (determining res judicata "does not apply" where a prior decision "only partially resolved the claims" and "was not entered as a final judgment").

Third, "[w]hile claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000). That is because a "plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims." Id. Moreover, a court's "denial of a motion to amend will not inevitably preclude subsequent litigation of those claims set out in a proposed new complaint. . . . Only denial of leave to amend on the merits precludes subsequent litigation of the claims in the proposed amended complaint." Id. (internal citation omitted) (emphasis in original).

In the Related Action, Plaintiff sought leave to amend "to add a cause of action for breach of contract based upon [Stanley's] sale of a substantial and material amount of its assets to Dormakaba."  (Reply Br., Related Action, No. 15-CV-6280, D.E. 91, at 2.)  Judge Lindsay denied leave to amend "on the procedural ground of untimeliness" and the "claim preclusion effect of" the Prior Order "assuming a final judgment will be rendered in that case--will not prevent litigation of claims arising after the filing of" Plaintiff's complaint in the Related Action.  Curtis, 226 F.3d at 139; see Prior Order at 16 ("Given the prejudice to Stanley that would result from an eleventh-hour amendment, the Court will not grant leave to amend.").  As such, Plaintiff's "failed attempt to add" claims to the Related Action arising out of the Sale to Dormakaba "is without consequence" to the res judicata analysis.  Legnani v. Alitalia Linee Aeree Italiane, S.p.A., 400 F.3d 139, 141-42 (2d Cir. 2005); Manbeck v. Micka, 640 F. Supp. 2d 351, 364-65 (S.D.N.Y. 2009) (stating in context of collateral estoppel that dismissal of a prior action "does not, however, have preclusive effect on Plaintiffs' claims based on facts occurring after the date the last operative complaint was filed.").  Accordingly, this portion of Defendants' motion is DENIED.

2.    *De Facto* Merger Claim

Next, Defendants argue that Plaintiff's claim for a "de facto merger" must be dismissed because "[t]here was no valid contractual obligation between Stanley and Quality at the time of the sale to Dormakaba" because the Letter(s) of Supply are "not a contract and therefore could not be assigned."   (Defs. Br. at 16-17.)  Plaintiff responds that it "has pled its claims with facial plausibility."  (Pl. Opp. at 22.)

As a general matter, "a corporation that acquires the assets of another is not liable for its predecessor's debts."  Moza LLC v. Tumi Produce Int'l Corp., No. 17-CV-1331, 2018 WL 2192188, at *4 (S.D.N.Y. May 14, 2018) (citing Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 702 (2d Cir. 2009)).  Under New York law, the "general rule against successor liability is subject to four exceptions when '(1) [the successor] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser [i.e., a de facto merger], (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.'"  Id. (quoting New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 207 (2d Cir. 2006)) (alterations in original).  To state a claim based on successor liability, a plaintiff "must allege enough facts for the Court to infer that one of the exceptions" applies.  Martin Hilti Family

13

Tr. v. Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 456 (S.D.N.Y. 2015).

At this stage of the litigation, the Court cannot conclude as a matter of law that the "Letter of Supply is not a contract and could not be assigned," as Defendants suggest. Nonetheless, the Court finds that Plaintiff has failed to state a claim for a de facto merger. The elements of a de facto merger under New York law are the "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." Nat'l Serv. Indus., 460 F.3d at 209. "Although the court examines all of the foregoing factors, continuity of ownership is the essence of a merger, and the doctrine of de facto merger cannot apply in its absence." Priestly v. Headminder, Inc., 647 F.3d 497, 505-06 (2d Cir. 2011) (per curiam) (quoting Nat'l Serv. Indus., 460 F.3d at 211) (internal quotation marks omitted).

Here, Plaintiff has not alleged facts suggesting continuity of ownership. Therefore, its de facto merger claim cannot succeed. Priestley, 647 F.3d at 505-06. "While legal conclusions can provide the framework of a complaint, they must be

14

supported by adequate factual allegations." Priestley, 647 F.3d
at 506. Plaintiff alleges, among other things, "there exists a
substantial continuity of [Stanley's] operations by [Dormakaba],
which is evidenced by common managers, salespersons and employees;
and management of the assets; and certain physical locations of
[Stanley]." (Compl. ¶ 28.) Notably missing are allegations
regarding continuity of ownership. See, e.g., Nat'l Serv. Indus.,
460 F.3d at 210 n.2 ("The continuity-of-ownership element
typically is satisfied where the purchasing corporation pays for
the acquired assets with shares of its own stock."). As such,
Defendants' motion to dismiss the de facto merger claim is GRANTED
and the claim is DISMISSED without prejudice. Nettis v. Levitt,
241 F.3d 186, 193-94 (2d Cir. 2001) (reversing a district court's
denial of a motion to amend to add successor liability claims)
(collecting cases), overruled on other grounds, Slayton v.
American Exp. Co., 460 F.3d 215 (2d Cir. 2006); Nat'l Serv. Indus.,
460 F. 3d at 211 n.3 (discussing Nettis and stating that by
"allowing the plaintiff to amend the complaint notwithstanding his
failure to establish continuity of ownership, we held simply that
it could not be said, at the pleading stage, that the plaintiff
could not bring forward evidence that there had been a de facto
merger."); cf. Ortiz v. Green Bull, Inc., No. 10-CV-3747, 2011 WL
5554522, at *10 (E.D.N.Y. Nov. 14, 2011) (finding plaintiff

"plausibly alleged a <u>de facto</u> merger . . . such that he should be permitted to engage in limited discovery on the issue.").

### 3.  Civil Conspiracy Claim

Defendants also move to dismiss the third cause of action for conspiracy to commit fraud "in furtherance of the breach of contract and the failure to assign the obligations of the Letter of Supply." (Compl. ¶ 33; Defs. Br. at 17-18.)  "It is textbook law that New York does not recognize an independent tort of conspiracy." <u>Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.</u>, 206 F. Supp. 3d 869, 913 (S.D.N.Y. 2016) (quoting <u>Sepenuk v. Marshall</u>, No. 98-CV-1569, 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000)).  Thus, civil conspiracy liability must be premised on an "underlying, actionable tort." <u>Id.</u>  Other than arguing that <u>res judicata</u> and collateral estoppel bar Plaintiff's fraud claim, Defendants merely argue that "the underlying fraud claim has not been adequately pleaded, nor is the civil conspiracy claim actionable by itself." (Defs. Br. at 18.)  Without further elaboration, these arguments are unpersuasive.  Accordingly, because "some of the tort claims survive, so too does the civil conspiracy claim." <u>ExpertConnect, L.L.C. v. Fowler</u>, No. 18-CV-4828, 2019 WL 3004161, at *9 (S.D.N.Y. July 10, 2019).

### 4.  The Court Will Not Stay Discovery

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of

another federal court suit." Curtis, 226 F.3d at 138.  Such actions are within the Court's discretion and depend on the equities of a particular case.  See id.; accord Amusement Indus., Inc. v. Midland Ave. Assocs., LLC, 820 F. Supp. 2d 510, 525-26 (S.D.N.Y. 2011).  In general, "[e]fficiency supports staying or dismissing a claim when there is a pending suit raising the same issues and claims." Byron v. Genovese Drug Stores, Inc., No. 10-CV-3313, 2011 WL 4962499, at *2 (E.D.N.Y. Oct. 14, 2011).

For the reasons stated supra in Section II.A.1, the Court declines to dismiss this action as "duplicative" of the Related Action.  (See Defs. Br. at 8-10); see Curtis, 226 F.3d at 140 ("Because claim preclusion would not bar litigation of events arising after the first amended complaint was filed in [the first action], it was an abuse of the district court's discretion to dismiss those claims as duplicative.  Plaintiffs would be entitled to bring them after the conclusion of [the first action], and we see no reason why they may not bring them while [the first action] is still pending."); cf. Lexico Enters., Inc. v. Cumberland Farms, Inc., 686 F. Supp. 2d 221, 224 (E.D.N.Y. 2010) (dismissing action after addressing whether a suit "is duplicative of a prior-filed suit" and noting that the action was "not based on any acts taken by the defendants after the First Action was commenced, and thus does not assert post-filing claims that could be exempt from preclusion.").

17

The Court also declines to stay this action at this time. "Although there may be findings of fact and law reached in the" Related Action,[7] "those findings are not pertinent to the parties' immediate ability to conduct discovery." Scalia v. KDE Equine, LLC, No. 19-CV-3389, 2020 WL 4336395, at *9 (E.D.N.Y. July 28, 2020).  If the Related Action remains pending once discovery here is completed, the Court would entertain a renewed motion to stay. See id.

     5.   Leave to Amend

"[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012).  Here, leave to amend is GRANTED and Plaintiff may amend its allegations to remedy the deficiencies

---

[7] Including whether certain individuals were "authorized to issue the Letters of Supply and as to whether Stanley was obligated to continue to supply Quality with the product it needed to fulfill its obligations under the GSA contracts." (Prior Order at 18.)

as detailed herein.   Any Amended Complaint must be filed within
thirty (30) days of the date of this Memorandum and Order.

     B. <u>Plaintiff's Motion to Disqualify Counsel</u>

        Plaintiff seeks to disqualify Michael Bojbasa and
Connell Foley from representing Defendants in "this action and any
other action involving" Plaintiff. (<u>See</u> Disqual. Mot.)  Plaintiff
argues disqualification is appropriate under New York's Rule of
Professional Conduct 3.7(a) ("Rule 3.7(a)") because Mr. Bojbasa,
representing Stanley in the Related Action, stated that Stanley
assigned "all valid and current contracts in effect at the time of
the sale of the purchasing company" and if Plaintiff "wishes to
purchase products for sale to the government under its contracts,
it is free to contact the purchasing company," Dormakaba.
(Disqual. Br., D.E. 23-2, ¶ 12.)   Plaintiff alleges here that
Dormakaba, represented by Mr. Bojbasa, "refused to sell" Products
to Plaintiff and claimed "that the contract was never assigned to
it."[8]  (<u>Id.</u> ¶¶ 5, 12-13.)  According to Plaintiff, disqualification
is appropriate because Mr. Bojbasa represents both Defendants
"[d]espite this obvious conflict in statements and conflict in
interest" and because Plaintiff intends to call Mr. Bojbasa as a

---

[8] The Court notes that the Complaint alleges that Dormakaba "has
not confirmed the assignment and has refused" Plaintiff's
discovery requests for that information.  (<u>See</u> Compl. ¶ 20.)

"material witness."  (Id. ¶¶ 6, 14, 16.)  Defendants did not file an opposition.

Under the New York Rules of Professional Conduct, with few exceptions not applicable here, a "lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact."  See Rule 3.7(a).  This rule is referred to as the "advocate-witness" rule. Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 232 (S.D.N.Y. 2010). "Courts have interpreted this rule to require disqualification where" the movant meets its "burden of showing the 'necessity of the testimony and the substantial likelihood of prejudice.'" Capponi v. Murphy, 772 F. Supp. 2d 457, 471-72 (S.D.N.Y. 2009) (quoting United States v. Tate & Lyle North Am. Sugars, Inc., 184 F. Supp. 2d 344, 346 (S.D.N.Y. 2002).  "[T]o succeed on a motion for disqualification in these circumstances, the movant must show 'specifically how and as to what issues in the case prejudice may occur and that the likelihood of prejudice occurring is substantial.'"  Id. at 472 (quoting Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)).  "'Prejudice' in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'"  Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009) (quoting Lamborn,

873 F.2d at 531).  "The potential disqualification of an individual attorney for the reasons listed in Rule 3.7(a) is related to but distinct from the disqualification of a law firm by imputation under Rule 3.7(b)."  <u>Montana v. RMS Indus. of New York, Inc.</u>, No. 19-CV-2889, 2020 WL 5995965, at *2 (E.D.N.Y. Sept. 24, 2020), <u>Report and Recommendation adopted by</u>, 2020 WL 5995128 (E.D.N.Y. Oct. 9, 2020).  "Disqualification by imputation under Rule 3.7(b) requires the movant to prove 'by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result.'"  <u>Id.</u> (quoting <u>Murray</u>, 583 F.3d at 178-79).

"Generally, disqualification under Rule 3.7(a) 'is triggered only when the attorney actually serves as an advocate before the jury.'"  <u>Bakken Res., Inc. v. Edington</u>, No. 15-CV-8686, 2017 WL 1184289, at *3 (S.D.N.Y. Mar. 29, 2017) (quoting <u>Finkel v. Frattarelli Bros.</u>, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010)).  Here, Plaintiff's motion, lodged "at the very outset of this case, before any discovery has been taken," counsels against disqualification.  <u>Gormin v. Hubregsen</u>, No. 08-CV-7674, 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009).  Accordingly, the motion is DENIED without prejudice "[g]iven the early stage of this litigation, coupled with Plaintiff's failure to demonstrate that any testimony to be provided by [Mr. Bojbasa] would be necessary

or prejudicial to [his] clients."[9] <u>Montana</u>, 2020 WL 5995965, at *4 (collecting cases); <u>see</u> <u>Gormin</u>, 2009 WL 508269, at *3 ("The reality is that at this stage of the litigation, it is impossible to determine how significant [counsel] might be as a witness or whether he is likely even to be called as a witness; whether his testimony would likely hurt or help his client; or whether his testimony would or would not be cumulative of other witnesses. Based on such a record, courts in this District commonly deny disqualification motions.") (collecting cases).

CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss (D.E. 28) is GRANTED in part and DENIED in part, Plaintiff is GRANTED leave to file an Amended Complaint within thirty (30) days of this Memorandum and Order, and Plaintiff's motion to disqualify counsel (D.E. 23) is DENIED without prejudice.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      November   10  , 2020
            Central Islip, New York

---

[9] For the same reasons, Plaintiff fails to meet the "exacting standard" to succeed on its request to disqualify Connell Foley from representing Defendants. <u>Montana</u>, 2020 WL 5995965, at *4

22